FRED H. THOMPSON *vs.* THE GLOBE NEWSPAPER COMPANY.

SAME *vs.* BOSTON PUBLISHING COMPANY.

SAME *vs.* BOSTON TRANSCRIPT COMPANY.

Suffolk.    December 14, 1931. — May 19, 1932.

Present: RUGG, C.J., PIERCE, SANDERSON, & FIELD, JJ.

*Libel*, Truth, Privilege, Malice. *Arrest. District Court. Clerk of Court. Practice, Criminal,* Warrant. *Evidence,* Competency, Relevancy and materiality. *Corporation,* Officers and agents. *Agency,* Scope of employment. *Practice, Civil,* Exceptions.

The authority given by G. L. c. 218, § 33, to clerks of district courts to issue warrants extends to the issuance of warrants under G. L. c. 276, § 16, relative to rendition.

An action of tort for libel against a corporation publishing a newspaper concerned an article printed in the defendant's newspaper containing statements that the plaintiff, after being charged in a warrant issued in New Hampshire with having procured the larceny in that State of certain pages of a magazine about to be issued, was arrested in this Commonwealth upon a warrant issued from a district court charging him with being a fugitive from justice; and a subsequent article relating to the plaintiff's extradition to New Hampshire having been stayed upon the issuance of a writ of habeas corpus from the District Court of the United States. The defendant's answer set up truth and privilege. It appeared that a complaint was made in the District Court, that a warrant was issued, the return of which recited that the plaintiff had been arrested, that the plaintiff appeared in the District Court, and that he later resisted extradition and sought a writ of habeas corpus in the District Court of the United States. *Held,* that

(1) It was proper to exclude evidence offered by the plaintiff to show what occurred in the District Court at the time when the warrant was issued and that the judge of that court was not present at that time: even though it be assumed that the clerk had no authority to issue the warrant, the validity of the proceedings in the District Court could not be called in question collaterally;

(2) It was proper to rule that the proceedings in the District Court were judicial proceedings within the meaning of the rule of law making privileged fair and accurate reports of judicial proceedings when made without express malice;

(3) The complaint and the warrant issued from the District Court properly were admitted in evidence: they were competent on the issue of truth or to show that the defendant had published a fair and accurate report of the proceedings;

(4) Certified copies of the extradition papers were competent to show the accuracy of the second article published in the defendant's newspaper;

(5) Whether or not there was a crime under the law of New Hampshire charged against the plaintiff in the extradition papers was immaterial;

(6) The defendant had not indorsed the truth of the charge upon which the plaintiff was arrested, and was not obliged to show that the charge was true in order to establish the defence of truth of the statements made in its articles;

(7) It was pertinent to show that articles in the defendant's newspaper other than those relied upon in the declaration, which were admitted solely on the issue of malice on the defendant's part, were privileged as reports of judicial proceedings;

(8) Rulings requested by the plaintiff on the issue of malice, to the effect that the defendant had no right to publish the account of the plaintiff's arrest unless it had reason to believe him guilty of the crime charged, properly were refused;

(9) It was proper to refuse the following ruling requested by the plaintiff: "If the jury find that the . . . [defendant] made no retraction of the charges or failed to give notice or adequate notice that a court in New Hampshire had acquitted the plaintiff after a trial on these charges, that may be considered as furnishing evidence of the true character and meaning of the article complained of ";

(10) It was proper to exclude, on the issue of malice, an article published by the defendant concerning proceedings in equity between the publisher of the magazine and the publisher of another newspaper, the plaintiff's employer, which did not contain the plaintiff's name, and to exclude testimony by the plaintiff that he had been recognized as a person referred to in such article, even though such references were defamatory, there being nothing to show that the defendant knew that the plaintiff was the subject of the reference;

(11) Malice on the part of the defendant could not be proved by showing malice on the part of employees of the defendant who were not responsible for the publication of the articles complained of by the plaintiff;

(12) The fact that the defendant made no investigation of the truth of the charges against the plaintiff was immaterial on the issue of malice on the defendant's part;

(13) It was immaterial on the issue of malice that other newspapers in the defendant's locality did not publish the article complained of by the plaintiff;

(14) The publication by the plaintiff's employer in its newspaper of

the contents of the pages which were alleged to have been stolen from the magazine properly was admitted in evidence to show the truth of a statement, in the defendant's article of which the plaintiff complained, that such publication was made on a date before the date set for publication of the pages in the magazine.

THREE ACTIONS OF TORT. Writs dated May 18, 1928.

The actions were tried together in the Superior Court before *Walsh*, J. Material evidence and portions of the judge's charge are stated in the opinion. The following rulings, among others requested by the plaintiff, were refused by the judge:

"21. If the jury find that the newspapers or either of them made no retraction of the charges or failed to give notice or adequate notice that a court in New Hampshire had acquitted the plaintiff after a trial on these charges, that may be considered as furnishing evidence of the true character and meaning of the article complained of."

"24. In considering whether the newspapers were actuated by ill will to the plaintiff in the publications complained of, the jury may take into account other publications of the defendants repeating either directly or by inference the charges complained of."

"34. The publications introduced by the plaintiff as evidence of malice are not to be considered by the jury as evidence of the truth or the accuracy of any of the statements contained therein.

"35. The issues of the newspapers subsequent to the issues containing the articles declared on as libellous containing repetitions of libellous charges are evidence of malice for the jury to consider and were admitted for that limited purpose and it is wholly immaterial to the issues in these cases whether the other statements in these subsequent issues were true or not or were privileged or not. It is the repetition of the statements declared on that constitutes the evidence from which the jury may draw the inference of malice or ill will."

The jury found for the defendant in the first and third actions. In the second action there was a verdict for the plaintiff on the first count of the declaration and for the

defendant on the other counts. The verdict for the plaintiff subsequently was set aside by the judge as against the evidence and the weight of the evidence applicable to that count. The plaintiff alleged exceptions.

*E. A. Whitman*, for the plaintiff.

*F. Rackemann*, (*H. M. Davis & R. W. Dunbar* with him,) for Boston Transcript Company.

*S. C. Rand*, (*J. Barker, Jr.*, with him,) for Boston Publishing Company.

*F. T. Leahy*, for The Globe Newspaper Company.

PIERCE, J. These are three actions for libel tried together by order of the court on motion of the plaintiff. The action against The Globe Newspaper Company was in two counts for the publication in the Boston Globe of false and malicious libels on May 18 and June 22, 1927; that against the Boston Publishing Company was in four counts for libels published in the Boston Traveler on May 18 and 19, 1927, in the Boston Herald on May 19 and June 23, 1927; that against the Boston Transcript Company was in one count alleging the publication in the Boston Transcript of a libel on May 18, 1927. The answer in each case was a general denial, truth and privilege. The jury found for the defendants Globe and Transcript companies, and for the Boston Publishing Company on counts 2, 3 and 4 with a verdict for the plaintiff on count 1, which was subsequently set aside by the judge as against the evidence and the weight of the evidence applicable to count 1. The cases are before this court on the plaintiff's exceptions.

The evidence shows that in the spring of 1927 a controversy, covering both religion and politics, was being carried on between Charles C. Marshall and Governor Smith of New York. In the April issue of the Atlantic Monthly an open letter from Marshall to Smith was published and it was understood that Smith was to answer this letter in a subsequent issue. The plaintiff, who was at that time employed by the Boston Post as a writer of stories of important events to be published exclusively in that newspaper, sought, without success, information from the treasurer of the Atlantic Monthly respecting this reply.

He was then sent by direction of his editor to Concord, New Hampshire, where is located the Rumford Printing Company which prints the Atlantic Monthly, to see if he could find out where he could get hold of the contents of the Smith letter because people in Concord had obtained them. On the way he visited one Sheriff O'Dowd, in Manchester, who gave him the name of a man named Sullivan, in Concord. The plaintiff explained to Sullivan what he was seeking, and he was referred to one Callahan, a night watchman at the Rumford Press, who obtained a copy of the Smith letter for him. He took the article back to Boston and it was published in the Boston Post on April 16, 1927. The Atlantic Monthly, as the plaintiff knew, was to release the article on April 25.

As a result of this affair, Herbert W. Rainie, solicitor for Merrimack County, New Hampshire, made a complaint against the plaintiff before a justice of the peace for procuring the commission of the crime of larceny by Callahan of eight printed pages of the Atlantic Monthly, whereupon a warrant was issued in New Hampshire. Rainie, then, came to Massachusetts and swore out a complaint in the District Court of Newton against the plaintiff as "a fugitive from the justice of the state of New Hampshire in that as is alleged in a complaint and warrant issued from said New Hampshire the said Thompson did procure one William E. Callahan to steal property of the value of Six Hundred Dollars." Whereupon a warrant was issued directing the arrest of the plaintiff for "Being a fugitive from the justice of the state of New Hampshire." The return on this warrant reads: "Middlesex, ss., Newton May 18, 1927. By virtue of this warrant I have arrested the within named Fred H. Thompson and now have him before the Justice of the District Court of Newton for examination. I have also summoned the within named witnesses to attend Court, as within directed. Richard J. Goode, Police Officer of Newton."

Goode testified that on May 18, 1927, he went to the plaintiff's house with this warrant; that "He met the plaintiff and said: 'I have got a warrant for you, Fred,' to which

the plaintiff replied: 'Why, let's see it!' The plaintiff then read it and went to the telephone, and as a result of the conversation the witness went with the plaintiff in the plaintiff's automobile to Boston, the plaintiff saying he was going to arrange for bail; that in Boston Mr. Shea came in with money in his hands and they all drove out together to headquarters in Newton when and where the plaintiff was booked and the bail bond was signed.''

The plaintiff testified that he was not arrested ''to his knowledge'' on or about May 18, 1927. On that date Goode, a police officer, came to his house and later he went to the police station with Goode and a group of friends, but he was not booked at the police station to his knowledge although he gave his name and address. He denied he had given bail in the District Court of Newton and he was then shown his answers to interrogatories, which stated he gave bail in the amount of $1,000 furnished by David P. Shea.

The plaintiff appeared in the District Court of Newton and resisted process there. He resisted the extradition process before Governor Fuller, and he sought relief by writ of habeas corpus in the United States District Court.

The alleged libels were published of and concerning these proceedings and are as follows:

In the Boston Globe on May 18, 1927: ''Reporter Arrested Newton, May 18 — Fred H. Thompson, reporter for the Boston Post, was arrested today at his home, 150 Pleasant st., Newton Centre, on a warrant charging him with being a fugitive from justice. Herbert W. Rainey, prosecuting attorney of Merrimac County, N. H., who came here this morning to cause Thompson's arrest, said that the reporter was wanted in Concord, N. H., to answer a charge of grand larceny in connection with the alleged theft from the Rumford Printing Company, printers for the Atlantic Monthly, of two copies of Gov. Alfred E. Smith's reply to the letter of Charles C. Marshall. J. Edward Silva, captain of the Concord, N. H. Police Department, accompanied Mr. Rainey. The warrant for Thompson's arrest was put into the hands of Inspector Richard Goode of the Newton Police Department. He went to Thompson's

house and made the arrest. Thompson was booked at Police Headquarters as a fugitive from justice. Bail was set at $1000. The publication by the Boston Post of Gov. Smith's reply to Marshall took place several days before the date set by the Atlantic Monthly. This advance publication, which, the magazine claims, was in violation of copyright law, is now the basis of a suit by the Atlantic Monthly against the Post Publishing Company for damages which may amount to $400,000. Mr. Rainey said that the watchman from whom it is alleged Thompson secured the copies of the letter was William E. Callahan. Callahan is to be arrested today in New Hampshire, he said. Mr. Rainey quoted Callahan as saying that he was given no money for securing the letters. Thompson will be arraigned tomorrow morning in Newton District Court. The bond for his bail was signed by David P. Shea, another employe of the Post. The specific charge in the warrant is 'procuring the commission of the crime of larceny by inducing William E. Callahan to steal eight printed pages of the May, 1927, issue of the Atlantic Monthly, the pages being a copy of the reply of Gov. Alfred E. Smith of New York to Charles C. Marshall's letter in the previous issue.' The warrant placed the value of the stolen pages at $600."

In the Boston Globe on June 22, 1927: "Thompson Is Admitted To Bail Pending Hearing  Pending a hearing in the United States District Court here yesterday on a petition for a writ of habeas corpus, Fred H. Thompson of Newton Centre, a Boston Post reporter, wanted by the New Hampshire authorities as a fugitive from justice, was admitted to bail yesterday afternoon in the sum of $1000."

In the Boston Traveler on May 19, 1927: "Thompson Case Is Continued  Post Reporter's Lawyer Asks Hearing Upon Fugitive Charge  Raising the question as to whether Fred H. Thompson, Boston Post reporter, was a fugitive from justice, Edmund Whitman, counsel for the defendant, caused a precedent to be established today when he declared there were issues to be tried in the case in Newton court before Associate Justice Lloyd B. Allen. Thompson faced court charged with being a fugitive from justice

from New Hampshire in connection with charges of the theft of eight printed pages of the Atlantic Monthly containing a copyrighted article by Gov. Smith of New York . . . . Thompson was arrested at his home at 150 Pleasant Street, Newton Centre, on a warrant by Inspector Richard Goode of the Newton police. The specific charge in the warrant is procuring the commission of the crime of larceny by William E. Callahan to steal eight printed pages, numbered 721 to 728, of the May (1927) issue of the Atlantic Monthly. The warrant places a value of $600 on the eight pages."

In the Boston Herald on May 19, 1927: "Post Reporter Held As Fugitive  Charged with Procuring Theft from Atlantic Monthly  Fred H. Thompson, 45, a reporter for the Boston Post, was arrested yesterday afternoon at his home at 150 Pleasant street, Newton Centre, on a warrant charging him with being a fugitive from justice from the state of New Hampshire. The arrest was made by Inspector Richard J. Goode of the Newton police department. The warrant was issued yesterday in the Newton Court at the request of Capt. J. Edward Silva of the Concord, N. H., police department and Herbert W. Rainie, solicitor for Merrimack county. The specific charge in the warrant, which is returnable in the Concord municipal court, is procuring the commission of the crime of larceny by William E. Callahan to steal eight printed pages, numbered 721 to 728, of the May, 1927, issue of the Atlantic Monthly, the pages being a copy of the reply of Gov. 'Al' Smith of New York to Charles C. Marshall's letter published in the previous issue. The warrant places a value of $600 on the eight pages. Inspector Goode took Thompson to the Newton police headquarters after serving the warrant, and the latter was booked as a fugitive from justice. Thompson was immediately released on cash bail of $1,000, the receipt being made out to David P. Shea, an employe of the Boston Post."

In the Boston Herald on June 23, 1927: "Extradition Is Stayed By Writ  Counsel for Accused Post Reporter Wins Plea in U. S. Court  Arguments Will Be Heard On

Tuesday Fred H. Thompson of Newton, Boston Post reporter, ordered extradited to New Hampshire by Gov. Fuller to answer grand larceny charges there, won a temporary stay yesterday when Judge James A. Lowell in the federal court here assumed jurisdiction in the matter and issued a writ of habeas corpus . . . . Thompson is wanted to answer charges growing out of the Boston Post's premature publication of Gov. Smith's answer to Charles F. Marshall, a copyright article owned by the Atlantic Monthly. It is alleged that Thompson, operating through a night watchman, at the Rumford Press, Concord, N. H., obtained copies of the article, extracts from which later were printed by the Boston Post."

In the Boston Transcript on May 18, 1927: "Post Reporter Arrested As Fugitive From Justice  Wanted in New Hampshire on Charge of Procuring the Commission of Larceny of  Pages of Atlantic Monthly Containing Governor Al. Smith's Letter  Fred H. Thompson, a reporter for the Boston Post, was arrested this afternoon at his home at 105 Pleasant street, Newton Center, on a warrant charging him with being a fugitive from justice from the State of New Hampshire.  The arrest was made by Inspector Richard J. Goode of the Newton police department.  The warrant was issued today in the Newton court at the request of Captain J. Edward Silva of the Concord, N. H., police department and Herbert W.. Rainie, solicitor for Merrimack County.  The specific charge in the warrant, which is returnable in the Concord municipal court, is procuring the commission of the crime of larceny by William E. Callahan to steal eight printed pages, numbered 721–728, of the May, 1927, issue of the Atlantic Monthly, the pages being a copy of the reply of Governor Al Smith of New York to Charles C. Marshall's letter published in the previous issue.  The warrant places a value of $600 on the eight pages.  Thompson, who is forty-five years old, was booked at police headquarters in West Newton and was immediately admitted to cash bail of $1000.  Thompson will be arraigned in the Newton Court tomorrow morning. The prosecutor said that the value of the printed pages as

named in the warrant is the value which Thompson is said to have placed on them in talking with Callahan."

The plaintiff further testified as to his mental distress resulting from these articles and from the coldness from those he approached for stories; also that this distress affected his ability to get stories, such assignments were given him with less frequency, and that about two years after the publications complained of he lost his position on the Boston Post.

The plaintiff in his brief states that "There was no substantial dispute at the trial as to the facts except whether the plaintiff had been, in fact, arrested. The answers set up truth and privilege and the main question in these cases arises on the correctness of the rulings by the judge as to what evidence, as a matter of law, justified these defences and also what, in law, constituted conclusive proof of an arrest." This defence is based on the rule of law which protects fair and accurate reports of judicial proceedings where made without express malice. The plaintiff contends that the only evidence in support of these answers was the complaint in the District Court and the warrant issued thereon. These were admitted subject to the exception of the plaintiff, the judge stating that "inasmuch as the teste was under the printed name of . . . [the judge of the District Court of Newton], it was a record of a judicial proceeding and the regularity of its issue could not be inquired into collaterally." Later when the clerk of the District Court of Newton was on the stand, the plaintiff sought to show what happened at the time the warrant was issued, but the judge refused to let him testify and said, "It [the warrant] has been admitted under the seal of the court with the signature of the clerk as a true copy. I do not see how you can show that it is not a record of the court. I should rule that you are not permitted to show whether the justice was there or was not there . . . ." A similar question to Rainie, the solicitor of Merrimack County, to show the absence of the judge, was likewise excluded.

These rulings were again questioned in the plaintiff's requests for rulings numbered 10, 11, 12, 13, 14, 15, which

the judge refused to give. The jury were charged on this aspect of the case as follows: "But I instruct you as a matter of law from the evidence in this case that there was a warrant for the arrest of Mr. Thompson, that it was presented to the properly qualified official of the Newton District Court, and that a proper warrant was issued for his apprehension and arrest by that court, and that that was in existence, and that he appeared before the Newton District Court as a result of those processes, namely, the warrant of the State of New Hampshire and the warrant of the Newton District Court . . . . I instruct you that the proceedings in the Newton District Court, at which place Mr. Thompson appeared, was a judicial proceeding . . . . The proceedings in the Newton District Court before Judge Allen constituted a judicial proceeding, and I so instruct you."

The plaintiff contends that the issuance of a warrant by a clerk of court on complaint sworn to is not a judicial proceeding within the privilege rule, and he sought to show that no judge was present when the warrant was issued in this case. On the ruling by the judge that such evidence would contradict a court record, he advances the theory that that rule of law based on public policy does not override the public policy of the privilege rule, on the assumption that a clerk of court has no authority to issue warrants under G. L. c. 276, § 16, relative to rendition. By the express provisions of G. L. c. 218, § 33, "A clerk . . . may receive complaints, administer to complainants the oath required thereto, and issue warrants, search warrants and summonses, returnable as required when such processes are issued by said courts." See *Commonwealth* v. *Posson,* 182 Mass. 339. There is nothing to show that such authority does not extend to the issuance of a warrant under G. L. c. 276, § 16, and that a clerk is without authority or jurisdiction to act in such cases. Although clerks of court are not specifically mentioned in that section, under their general authority as given by said c. 218, § 33, they would come within § 16 of said c. 276. If it be assumed that clerks cannot issue warrants under the rendition statute, it is

hardly open to dispute that the testimony offered by the plaintiff to show that no judge was present when the warrant was issued impeached the validity of the proceedings in the District Court of Newton and was accordingly inadmissible. *Commonwealth* v. *O'Brien,* 152 Mass. 495. *Watts* v. *Stevenson,* 169 Mass. 61. *Tufts* v. *Hancox,* 171 Mass. 148. Nor does the argument of the plaintiff, that the public policy of the privilege rule does not permit of an extension to a case where the validity of a proceeding is established by the fact that the record cannot be contradicted, require a contrary conclusion. In this view of the case it would be unnecessary to consider at length the other exceptions of the plaintiff to refusals to rule relating to the law of privilege. The instructions of the judge, based on the ruling that the proceeding before the judge of the District Court of Newton was a judicial proceeding within the privilege rule, were correct. See *Lundin* v. *Post Publishing Co.* 217 Mass. 213, 216, where Sheldon, J., defined the extent of the privilege for a fair report in a newspaper of pending judicial proceedings as follows: "So it will extend to fair and accurate reports of hearings had upon applications for the issuance of warrants or other criminal process, or upon hearings had after such process has been issued, though they be not final trials upon the merits." These instructions were not excepted to.

The plaintiff also excepted to the admission in evidence of the complaint and warrant issued in the District Court of Newton. The complaint and the warrant were clearly admissible on the issue of truth or to show that the defendants had published a fair and accurate report.

The defendants also offered and the judge admitted certified copies of the extradition papers in due form, over the plaintiff's objection and exception. These proceedings were also relevant to establish the accuracy of the allegations in the articles published in the Boston Herald on June 23, 1927, and in the Globe on June 22, 1927.

When the plaintiff sought to show that there was no crime charged in the extradition papers, the judge ruled: "My view of it is that these issues do not involve what the law

of New Hampshire was. Accordingly, I exclude the ·question . . . ." The ruling was correct. No question was pleaded as to foreign law and no occasion was presented calling for the introduction of testimony as to foreign law. Nor did this have any bearing on the question of malice.

On the question of truth the plaintiff's requests for rulings numbered 6, 7 and 33 present the theory that the newspapers had indorsed, assumed, and repeated the criminal charge and that the defence of truth could not be established without satisfying the jury that a theft was actually committed. But the defendants under their pleas justifying publication on the ground of truth were not so obligated. This is established by *Commercial Pub. Co.* v. *Smith*, 149 Fed. Rep. 704, where the court said at page 706: "The publication of the fact that one has been arrested, and upon what accusation, is not actionable, if true." See also *Stacy* v. *Portland Publishing Co.* 68 Maine, 279, 286; *Hanson* v. *Bristow*, 87 Kans. 72. The defendants had reported the fact of an arrest and the fact of the charge on which the arrest was made. There was no indorsement of the truth of the charge.

The plaintiff's request numbered 8 was as follows: "The question in these cases is not what the defendants intended to charge, but what in fact they did charge and what the public who were to read the article might reasonably suppose they intended to charge." This request, as the plaintiff argues in his brief, was to direct the jury to the phrase "fugitive from justice." But on this aspect of the case the jury were fully and accurately instructed in the following language: "Now, the words 'fugitive from justice' are not to be given any technical or narrow construction, but are to be taken as ordinarily understood . . . . It is for you to say, taking those articles as a whole, giving to the words, phrases and language used therein the commonly· accepted and understood meaning of those words, whether it was a true statement."

The plaintiff also argues on the following ruling in the charge: "I further instruct you as a matter of law that the action of Inspector Goode from all the evidence in the case,

taking into consideration the plaintiff's testimony, his con-
duct and his movements thereafter, constituted an arrest."
No exception was taken to this portion of the charge. But
in any case it does not seem that the ruling was erroneous.
See *Mowry* v. *Chase,* 100 Mass. 79, 85.

The plaintiff's request numbered 4 relates to the mat-
ter of truth as well as privilege and is as follows: "It is no
defence to a publication otherwise libellous that the news-
paper reports what others have said or done. If the charges
thus published are not true or otherwise privileged, it is no
defence to the action that the publication is literally cor-
rect in stating the charges; in other words, unless the news-
papers can justify as true the charges set forth in the papers
or statements reported by them, there is no defence to the
action. This, of course, does not apply to fair, impartial
and accurate reports of proceedings before a court, if there
have been any such." The judge dealt fully with truth and
privilege and gave clear and adequate instructions as to the
necessity of a fair and accurate report.

Request numbered 5 relates to the distinction between
the privilege of judicial proceedings themselves and the privi-
lege which extends to the reporting of judicial proceedings.
The judge charged on this aspect of the case: "Now, the
privilege is not the privilege that extends to the judicial
proceeding itself, that is, the judge or the counsel in the
case, the clerk of the court; there is a certain privilege
attached to that, but that is not the privilege we are speak-
ing of here; nor is it the privilege that is claimed by the
defendants in these cases." So far as the above requested
instructions were concerned, it was not essential that the
judge should adopt their exact phraseology. It is sufficient
if the principles were rightly stated to the jury and correct
rules prescribed to aid them in the decision of the questions
in issue. These requests were in substance given. *Parsons*
v. *Martin,* 11 Gray, 111, 114. *Norwood* v. *Somerville,* 159
Mass. 105, 112. *Graham* v. *Middleby,* 185 Mass. 349, 354.
No exceptions were taken to the portions of the charge as
given.

In order to defeat the defences of truth and privilege

the plaintiff sought to show malice in fact. *Doane* v. *Grew*, 220 Mass. 171. He introduced, subject to the objections and exceptions of all the defendants, publications of each defendant subsequent to the publications set out in the declarations, stating in his offer that the evidence was limited to the issue of express malice. The defendant Boston Publishing Company questions this ruling, but it is correct under authority of *Davis* v. *Starrett*, 97 Maine, 568, 574, where the court said, "The materiality, then, of evidence of other statements than the one sued for depends not upon whether they are privileged or not, but upon whether or not they have a tendency to show actual malice, in the utterance of the slander in suit." The plaintiff's requests numbered 24, 34 and 35 were framed to bring the effect of this evidence before the jury who were fully instructed in this language: "In the trial of the cases there were a number of publications admitted in evidence later than May 18 and on different dates than those set forth in the declarations. Those exhibits — and you will find from comparison with the exhibits attached to the declarations just which publications are referred to — are to be considered by you solely upon the question of malice, not in publishing those subsequent declarations, but in determining whether or not because they were subsequently published the defendants were actuated by malice in issuing the publications relied upon in the declarations."

At the close of the charge counsel for the plaintiff said: "I also except to your instructions about whether the proceedings after those complained of in the declarations were judicial proceedings or were fair and impartial, my point being that they were purely malicious, and, therefore, whether partial or impartial has nothing to do with it." So far as this part of the charge is concerned, it was pertinent to show that the subsequent articles which the plaintiff complained of were themselves reports of judicial proceedings.

The plaintiff also made several other requests for rulings on the issue of malice which were refused. Requests numbered 19 and 29 assert the doctrine that a newspaper may

not publish the story of an arrest, unless the publisher has reason to believe the man arrested to be guilty of the crime charged. These requests were inapplicable to the facts. The papers had not published a charge of criminality. They had published a report of an arrest upon a specific charge. *Commercial Pub. Co.* v. *Smith*, 149 Fed. Rep. 704.

Request numbered 20 relates to the possible inference of malice from the language of the publication itself. This was adequately dealt with in the charge.

Request numbered 21 relates to the publication of a retraction or adequate notice of the fact that the plaintiff had been acquitted in New Hampshire. This request was rightly refused.

The plaintiff also offered as evidence of malice an article published by the Globe Newspaper Company on May 8, 1927, ten days before the arrest of the plaintiff and ten days before the publication of the article complained of. The judge excluded this evidence and also the testimony of the plaintiff that he had been recognized as the person referred to therein. This publication reported, in part, a bill in equity filed by the Atlantic Monthly Company against the Post Publishing Company in the District Court of the United States for the District of Massachusetts. The plaintiff did not contend that the article reported the bill in equity either incorrectly or unfairly, nor that the article contained the name of the plaintiff. Prior defamatory publications of the defendant might be competent evidence on the issue of malice, *Faxon* v. *Jones*, 176 Mass. 206, but there is nothing here to show that the defendant knew that the plaintiff was the person referred to, assuming that the reference therein could be construed as of a defamatory nature. The fact that other persons recognized the plaintiff as the one referred to is of no consequence. The prior defamatory publication as evidence on the issue of actual malice must necessarily be predicated on knowledge by the defendant of the actual party referred to.

The plaintiff also took exception to the exclusion of several items of evidence on what he calls in his brief "imputed malice," and offered to prove that one Drury, who

was an editor of the Boston Herald in charge of the editorial staff, had expressed ill will toward him. He also sought to show by Green, the reporter for the Boston Transcript, that no investigation had been made to see whether there was any foundation in fact for the charge that the plaintiff had procured the theft of the article. So too he asked F. W. Buxton, editor of the Boston Herald, if it was not "the practice of the Boston Herald not to print stories about litigations involving other newspapers." It is the plaintiff's contention that malice may be shown by direct evidence by persons in editorial or reportorial capacity, supervising or writing for the paper. This is based on the theory that the malice of authorized agents is imputable to a corporation. As is said in the case of *Friedell* v. *Blakely Printing Co.* 163 Minn. 226, 233, "The doctrine is now well-established in England that malice or motive incident to the publication of qualified privileged matter, which recognizes actual malice on the part of the agent, is imputable to his principal which is a corporation." See *Goodrich* v. *Stone*, 11 Met. 486; *Post Pub. Co.* v. *Hallam*, 59 Fed. Rep. 530, 535, 536; Gatley, Libel and Slander (2d ed.) 453. But the principle of those cases would not be applicable in the circumstances here presented. ". . . this law should, in its application to qualifiedly privileged articles, be restricted to those agents who are intrusted with the responsibility of determining what should and what should not be published. We must look to the agency responsible for the publication to determine liability." *Friedell* v. *Blakely Printing Co.* 163 Minn. 226, 235. So far as the alleged ill will of Drury is concerned, he himself testified "that he had nothing to do with any of the Thompson stories." There is no showing that Buxton had the supervision over the publication of these articles. Green, apparently, was no more than a reporter whose duty it was to get the news. The fact that neither he nor his paper investigated the truth of the criminal charge would have no bearing on the issue of actual malice. The defendant was simply publishing a report of a criminal charge. *Commercial Pub. Co.* v. *Smith*, 149 Fed. Rep. 704.

The plaintiff also offered to show that other papers published in Boston did not publish the alleged libel. The judge excluded this offer. This exclusion was right. Judgment of other Boston papers as to what did or did not constitute news would have no bearing on the question of actual ill will on the part of particular defendants. Actual malice relates to the defendants' motives and intent. The fact, if it was a fact, that other newspapers published in this vicinity failed to publish the news item regarding the plaintiff's arrest, has no logical bearing upon the defendants' state of mind in making the publications complained of. The practical effect of a contrary ruling would be that the privilege of publication might be destroyed because other newspapers in the vicinity did not see fit to publish the same article.

The plaintiff further argues that it was erroneous to admit in evidence the publication by the Boston Post of the Smith letter. It is his contention that the only effect of the admission of this evidence was to create an atmosphere prejudicial to the plaintiff as the basis for an argument that the newspaper had violated the ethics of business and that he should be held responsible therefor, if not legally yet ethically. This evidence was admissible on the issue of truth in view of the fact that the Boston Globe in the article complained of which was published on May 18, 1927, contained a statement that "The publication by the Boston Post of Gov. Smith's reply to Marshall took place several days before the date set by the Atlantic Monthly."

On the issue of damages, the plaintiff also took several exceptions to the exclusion of evidence and likewise ·to refusal to give rulings numbered 22, 23, 25, 26 and 28. But these exceptions become immaterial in view of the fact that the jury returned general verdicts for the defendants. *Oak Island Hotel Co.* v. *Oak Island Grove Co.* 165 Mass. 260, 261. *Todd* v. *Boston Elevated Railway*, 208 Mass. 505, 506. *Adams* v. *Hayden*, 236 Mass. 454, 460.

*Exceptions overruled.*