ROBERT W. SIBLEY[1] vs. HOLYOKE TRANSCRIPT-TELEGRAM
PUBLISHING CO., INC.

Hampden.   December 8, 1983. — March 14, 1984.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Libel and Slander.  Words, "Judicial proceeding."*

A newspaper's qualified privilege of "fair report" of judicial proceedings
extended to the publication of statements contained in the affidavit pre-
sented by police to a magistrate in order to obtain a search warrant,
where the warrant in fact issued.  [470-472]

CIVIL ACTION commenced in the Superior Court on October
27, 1977.

The case was tried before *Moriarty, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Raymond R. Randall* for the defendant.

*Philip O'Brien, Jr.,* for the plaintiff.

*James C. Heigham,* for Massachusetts Newspaper Publishers
Association, amicus curiae, submitted a brief.

NOLAN, J.  This court granted the plaintiff's application for
direct appellate review of this libel action following judgment
for the defendant in the Superior Court.  The plaintiff, Robert
W. Sibley, raises the issue whether a newspaper's qualified
privilege of "fair report" of judicial proceedings extends to
publication of statements contained in an affidavit presented
to a court official in order to obtain a search warrant, where
the warrant in fact issued.  The Holyoke Transcript-Telegram
Publishing Co., Inc. (Transcript-Telegram), cross appeals a jury's

---

[1] Trial of this action was consolidated with complaints filed by Sibley
individually and Sibley Heating Service, Inc.  No appeal was taken from
the judgment for defendant as to Sibley Heating Service, Inc.

special verdict that the newspaper acted negligently in not verifying the statements summarized in the affidavit by directly contacting the persons who made those statements. We hold that the qualified privilege extends to this case, and in view of this determination, we need not reach the issue of negligence in the reporter's research of the affidavit's contents.

The events before trial were these. On April 12, 1977, Stephen Kamienski, a reporter for the Transcript-Telegram, learned, through publication in a competing newspaper, of a criminal investigation concerning Sibley's oil heating service. Kamienski inspected papers at the clerk's office in the District Court, particularly the affidavit in support of an application for a search warrant presented by the police officer investigating complaints against Sibley. Kamienski learned that a search warrant pertaining to the personal and business records of the plaintiff had been issued by a judge of that court. Kamienski made several telephone calls to determine more fully the scope and nature of the investigation and allegations, but did not communicate with the police officer who applied for the warrant, nor with those persons whose statements were summarized in the affidavit.

An account of the investigation was published that day by the Transcript-Telegram under the headline "Investigation probes alleged oil co. fraud." The article stated that the police and the office of the district attorney were pursuing allegations of fraud made against Sibley's oil heating company. The article recounted that the investigation commenced after police obtained a search warrant for various records. The warrant issued after four former employees were questioned by police concerning Sibley's business practices. Further, the article stated: "An affidavit signed by [the investigating officer] and attached to a search warrant issued by the court March 25, contains allegations made by three former deliverymen and a former bookkeeper, who were employed by Sibley." Thereafter, the article recited the circumstances of the allegedly fraudulent practices as revealed by the former employees with such allegation attributed to the affidavit.

The evidence concerning Sibley's alleged wrongful practices was later presented to a grand jury, which returned a no bill. This action for libel was commenced on October 27, 1977, and tried in the fall of 1982.

The judge submitted ten special verdict questions for the jury's consideration. See Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). In response, the jury found that the statements published by the Transcript-Telegram concerning Sibley's allegedly fraudulent practices were false. The jury found that the publication was made without malice, without knowledge of its falsity, and without reckless disregard of its truth or falsity.

The jury found, however, that the newspaper did not act reasonably in checking the truth or falsity of the statements before publication. Yet in response to the next question the jury determined that the article did "constitute a fair and accurate account of the proceedings which resulted in the issuance of a warrant." The jury then returned its assessment of the damages which would fairly compensate Sibley and his company if "otherwise entitled to recover," finding $30,000 to be reasonable as to Sibley and finding no damage as to the company.

Both parties moved for entry of judgment on the verdict on the issue of qualified privilege. The Transcript-Telegram moved for judgment notwithstanding the verdict on the issue.

In his memorandum and order, the judge refused to enter judgment notwithstanding the verdict on the negligence issue. He reasoned that given the jury's determination of the falsity of the statements they might have concluded that if the reporter had inquired of the former employees before publication, the weaknesses in their statements would have become manifest, which in turn would have led to a more accurate publication. However, the judge then ordered the entry of judgment for the Transcript-Telegram, based on his view that the qualified privilege of fair report of a judicial proceeding applied to the issuance of a search warrant.

This court has long recognized a publisher's qualified privilege to report fairly and accurately the subject matter of judicial proceedings. This qualified privilege is justified "not because the controversies of one citizen with another are of pub-

lic concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself . . . as to the mode in which a public duty is performed.'' *Cowley* v. *Pulsifer,* 137 Mass. 392, 394 (1884). As the privilege is not absolute, however, the issue of its applicability must focus upon whether the reported material reflects the subject of a judicial proceeding as well as whether it is fair and accurate. It has been said that the act of filing a paper with the court, without more, is not a ''judicial proceeding.'' *Cowley* v. *Pulsifer, supra.* The privilege extends only ''to matters which really have been made the subject of judicial action.'' *Lundin* v. *Post Publishing Co.,* 217 Mass. 213, 216 (1914). Ordinarily this determination is within the province of the jury. *Parker* v. *Republican Co.,* 181 Mass. 392, 395 (1902). However, because the early cases clearly contemplated ''judicial proceedings'' as being transactions in open court, the dividing line between ''judicial proceedings'' and other court functions not within the privilege is a matter of some uncertainty. This court has previously held that a fair and accurate report of a clerk's issuance of an arrest warrant upon a sworn complaint falls within the privilege. *Thompson* v. *Globe Newspaper Co.,* 279 Mass. 176, 186-187 (1932). The privilege is not limited to proceedings before a judge, but applies in cases in which judicial powers are exercised. *Thompson* v. *Boston Publishing Co.,* 285 Mass. 344, 347 (1934).

It is apparent to us that the decision whether sufficient information was presented by the investigating officer to justify issuance of a search warrant involved the exercise of judicial discretion and that issuance of the warrant constituted a '' judicial proceeding.'' The warrant bore the signature of a judge of the court but the signature of a clerk magistrate would have been equally effective. *Thompson* v. *Boston Publishing Co., supra.* Nor can we accept Sibley's argument that issuance of an arrest warrant, often coming at the end of an investigation, deserves the protection of a privilege, but that the issuance of a search warrant, often necessary at an investigation's incep-

tion does not.  The purpose of the privilege is to ensure that publications may perform the important function of informing the public of actions taken by the courts.  Doubtlessly, it is painful to be cast before the public as the target of an investigation where later events point to baseless or vexatious charges.  The greater wrong, however, would be to shroud in secrecy, for want of publication, the government's scrutiny of its citizens.

*Judgment affirmed.*