Brassard, J.
This action arises out of an article published on February 17, 1997 in The Boston Globe by defendant The Globe Newspaper Company (“Globe”) written by defendant Patricia Neaion (“Neaion”) concerning a lawsuit plaintiff Randy Britton (“Britton”) brought in United States District Court for the District of Massachusetts against the City of Boston, certain Boston police officers and others (“federal action"). Britton alleges that the article was defamatory because it implied that he committed perjury, suborned perjury and obstructed justice during the course of the federal action. Defendants now move for summary judgment asserting the challenged portions of the article are fair reports of a judicial proceeding and are thus privileged. Britton also moves for summary judgment asserting that Massachusetts’ fair report privilege does not apply to the article because there was no judicial action taken concerning portions of the article prior to its publication. For the following reasons, defendants’ motion for summary judgment is ALLOWED and plaintiffs motion for summary judgment is DENIED.

BACKGROUND

The undisputed material facts as established by the summary judgment record are as follows:
On June 29, 1993, Britton brought a federal and state civil rights action in the United States District Court for the District of Massachusetts against the City of Boston, certain Boston police officers and others (“federal defendants"). Britton alleged that several Boston police officers illegally seized his rifle and then brought false felony charges against him when he threatened to sue for its return. Britton asserted claims under 42 U.S.C. §1983 and claims for malicious prosecution and abuse of process.
Britton disputes certain of the facts set forth in the District Court opinion, Britton v. Maloney, 981 F.Supp. 25 (D.Mass. 1997). That opinion, addressing post-trial motions, describes the following background:
On June 30, 1990, Britton entered Boston Police Department (“BPD”) headquarters at 154 Berkeley Street, Boston, Massachusetts, carrying the unattached barrel and action portions of an AR-7 rifle. While inside the BPD, Britton told Detective Thomas Dooley and Sergeant Patrick Maloney that his daughter and he were driving to work when two individuals in a red car began chasing him. Britton stated that the passengers pointed a gun at him. Fearing for the safety of his daughter and himself, Britton drove to the BPD.
Shortly after Britton informed the officers what had just occurred, Detective Dooley grabbed Britton from behind, took hold of the barrel of his rifle and began to pull. As this was happening, Britton saw the red car as it circled around the block and told the officers that the individuals in the red car had tried to kill him. Detective Dooley subsequently spoke with these individuals, Tammy Loughlin (“Loughlin”), also known as Tammy Carpenter, and Tyrone Stampley (“Stampley”).
After remaining at the BPD for nearly an hour, Britton requested that the officers return his rifle to *305 him, but both Sergeant Maloney and Detective Dooley refused. They stated that they would retain it for safe keeping, even though Britton possessed a valid Firearm Identification Card. Later that day, Britton called the BPD to complain about the earlier incident’. Britton spoke with Sergeant Maloney and told him that he and the other officers acted illegally when they seized Britton’s rifle because he possessed a valid Firearm Identification Card.
On July 3, 1990, Britton returned to the BPD and explained to the Deputy Superintendent on duty how his rifle had been seized. During this conversation, Sergeant Maloney appeared and informed Britton that criminal charges were pending against him for assault based on statements from Stampley and Loughlin and for pointing his rifle at them. On September 25, 1990, these charges were dropped for want of prosecution and the BPD returned Britton’s rifle.
On October 28, 1996, federal defendants’ counsel conducted an ex parte sworn interview (“examination transcript”) of Loughlin. The 67-page examination transcript states, in part, that: Loughlin’s boyfriend, Stampley, chased Britton by car from the Park Square area to Boston police headquarters on Berkeley Street. Loughlin denied that Britton had threatened her and Stampley with a rifle and denied having made such an accusation to the police. Loughlin also admitted that she was a heroin addict and a prostitute and stated that she had sex with Britton twice prior to June 30, 1990 and two or three times since then. Loughlin described Britton as “intimidating” and said that she signed two affidavits at his request because she was “intimidated” and thought it would make him go away.[2]
On February 3, 1997, the trial of the federal action commenced before District Court Judge Nancy Gertner. Sergeant Maloney and Detective Dooley testified that they had spoken with Stampley and Loughlin and that Loughlin informed them that she was a prostitute and that Britton had solicited sex from her on prior occasions, including on June 30, 1990. Stampley later testified. Loughlin, although subpoenaed, never appeared to testify.
On February 4, 1997, relying upon Loughlin’s failure to respond or appear in court after the issuance of a trial subpoena and an arrest warrant, federal defendants attempted to introduce portions of the examination transcript into evidence. Judge Gertner excluded the examination transcript on the ground that Loughlin’s examination was not a deposition because, although sworn, neither Britton nor anyone representing him was present, thus the defense failed to meet the requirements ofFed.R.Evid. 804(b)(1). See Britton, 981 F.Supp. at 33.
On February 12, 1997, federal defendants submitted a motion to find Loughlin in contempt of court. Attached to this motion was the 67-page examination transcript. The motion asked the District Court to hold Loughlin in contempt and to issue a warrant for her arrest.[3]
On February 17, 1997, the Globe published an article in The Boston Globe written by Nealon. The article (“article”) entitled “Lexington Man wins $200,000 verdict against Boston Police,” discussed Britton’s suit against certain Boston police officers for violations of federal and state law based on the incident at the Boston Police Department Headquarters. In preparing to write the article, Nealon reviewed and relied upon the court file of the proceedings in the federal action, including the recently filed motion to find Loughlin in contempt, which was available for public inspection.[4] On September 28, 1997, the District Court denied the motion to find Loughlin in contempt.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1959). “If the moving party establishes the absence of a trial issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion.” Pederson, 404 Mass, at 17. Whether the fair report privilege applies to the article is a matter of law to be determined by the judge. Joyce v. Globe Newspaper Co., 355 Mass. 492, 498 (1969). Whether or not the report is accurate and fair is a question of fact for the jury “if there is a basis for divergent views.” Id. at 498-99.
Britton asserts that the article contained the following defamatory statements: (1) “Among the evidence was a signed affidavit from admitted prostitute Tammy Loughlin;” (2) “(I]n a sworn statement she [Loughlin] gave to city attorneys in October she said that Britton had purchased sex from her on at least five occasions, including two or three times after the car chase . . . The day she signed Britton’s affidavit claiming that the police had lied about the assault on her and Stampley, Loughlin said she was sick and in need of heroin . . . She signed the paper because she was ‘intimidated’ by Britton”; and (3) “Stampley apparently recognized Britton, who Loughlin said had ‘done something to her’ and he gave chase. They followed Britton to police headquarters where he ran in brandishing a rifle.”
Defendants contend that under the fair report privilege they are immune from liability for defamation in this action. Massachusetts law recognizes that this qualified privilege allows those who fairly and accurately report certain types of official or governmental *306 action to be immune from liability for claims arising out of such reports. ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779, 782 (1989), abrogated on other grounds by United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990); Jones v. Taibbi, 400 Mass. 786, 794-95 (1987) (published reports of judicial, legislative or other official proceedings are privileged); Sibley v. Holyoke Transcript-Telegram Publ’g Co., 391 Mass. 468, 470-71 (1984). This privilege extends to all matters which have been made the subject of judicial proceedings, though such proceedings maybe merely preliminary or interlocutory or even ex parte. Lundin v. Post Publ'g, 217Mass. 213, 215 (1914). The purpose of the fair report privilege is to ensure that “publications may perform the important function of informing the public of actions taken by the courts.” Sibley, 391 Mass, at 472.
In Sibley, plaintiff sued a newspaper for defamation after a reporter obtained papers and attached affidavits from the criminal clerk’s office concerning a magistrate’s issuance of a search warrant. The reporter then wrote a story concerning allegations of plaintiffs fraudulent conduct attributing the information to “[a]n affidavit signed by [the investigating officer] and attached to a search warrant issued by the court on March 25.” The Court found that the fair report privilege immunized the reporter’s actions because the issuance of the search warrant constituted judicial action. Sibley, 391 Mass, at 471. See also Thompson v. Globe Newspaper Co., 279 Mass. 176, 187 (1932) (clerk’s issuance of an arrest warrant upon a sworn complaint falls within fair report privilege).
As this privilege is not absolute, “the issue of its applicability must focus upon whether the reported material reflects the subject of a judicial proceeding.” Sibley, 391 Mass. 470-71. The act of filing a paper with the court, without more, is not a “judicial proceeding.” Cowley v. Pulsifer, 137 Mass. 392, 394 (1884). “The privilege is not limited to proceedings before a judge, but applies in cases in which judicial powers are exercised.” Thompson v. Boston Publ’g Co., 285 Mass. 344, 347 (1934) (application for arrest warrant before clerk-magistrate constitutes judicial action). Compare Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 158(1945) (privilege does not extend to the report of accusations contained in papers filed by a party not yet brought before a judge for official action).
This court finds as a matter of law that the examination transcript was the subject of a judicial proceeding prior to the publication of the article. Contrary to Britton’s contention, this is not a case where the examination transcript had been merely placed in the files of the court and had not yet been brought to the attention of the court. See Lundin, 217 Mass, at 216; Cowley v. Pulsifer, 137 Mass. 392 (1884). Although the District Court did not rule on the contempt motion until well after the article’s publication, an earlier judicial ruling did address the examination transcript. Specifically, on February 4, 1997, in open court after a brief colloquy about whether either party could make use of the examination transcript, Judge Gertner ruled that the examination transcript was inadmissible evidence. Although the examination transcript was not admitted into evidence, it is clear that the examination transcript was the subject of judicial action. See Lundin, at 217. The exclusion of evidence, an everyday occurrence injudicial proceedings, is “judicial action” as much as is the admission of evidence. The District Court’s ruling on the transcript’s exclusion, alone, is sufficient judicial action to trigger the fair report privilege because knowledge of it “throws light upon the administration of justice.” Id. at 216.
Further examination of the summary judgment record in this case reveals that the examination transcript was subject to judicial action on a previous occasion as well. In December of 1996, Britton referred to Loughlin’s 67-page examination transcript and used direct statements from the examination transcript in his cross-motion for summary judgment in the federal action. Britton also attached portions of the examination transcript to his motion for summary judgment. Thus, the District Court’s ruling on the cross-motions for summary judgment in the federal action is additional judicial action which triggered the fair report privilege. Although there is no evidence before this court to the effect that Nealon was familiar with the summary judgment proceedings before the District Court or the Court’s evidentiary ruling as to the examination transcript, the examination transcript was nonetheless the subject of judicial action for purposes of the fair report privilege.
To qualify for the fair report privilege the report must be a fair and accurate portrayal of the judicial action. The test is whether a reporter’s “rough-and-ready summary" of a proceeding is “substantially correct.” ELM, 403 Mass, at 783; MiGi, Inc. v. Gannett Massachusetts Broad., Inc., 25 Mass.App.Ct. 394, 396 (1988). “A statement is considered a fair report if its ‘gist’ or ‘sting’ is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced.” ELM, 403 Mass, at 783, quoting Williams v. WCAU-TV, 55 F.Sup. 198, 202 (E.D.Pa. 1983).
In preparing to write the article, Nealon reviewed, among other documents, the examination transcript which had been the subject of judicial action on two prior occasions (summary judgment and trial) and wrote a newspaper article that is a fair and accurate representation of the judicial proceedings. There is insufficient evidence from which a jury could conclude that defendants abused their privilege. The article, while not completely accurate,[5] constituted “a rough and ready summary that was substantially correct.” MiGi, 25 Mass.App.Ct. at 396. The article conveyed that a trial had taken place, that Loughlin had not appeared in front of the jury, that the case was “tan *307 gled" and that Britton had prevailed. Because the court finds that the article is subject to the fair report privilege and there is no genuine issue of material fact as to the substantial accuracy of the report, summary judgment is appropriate. MiGi, 25 Mass.Aplp.Ct. at 394.[6]

ORDER

For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment is ALLOWED and Britton’s motion for summary judgment is DENIED. Accordingly, judgment shall enter in favor of defendants.

 In the federal action, portions of the examination transcript were used by federal defendants and Britton in dispositive motions prior to trial. On November 27, 1996, twelve pages of the examination transcript were attached to federal defendants’ opposition to Britton’s cross-motion for summary judgment. On December 9. 1996, forty pages of the examination transcript were attached to Britton's reply memorandum in support of his cross-motion for summary judgment.

 It is undisputed that the District Court did not issue its decision on the contempt motion and other post-verdict motions until September 28, 1997. See Britton, 981 F.Supp. 25 (D.Mass. 1997).

 The federal action record contained four statements from Loughlin: (1) her January 4, 1996 affidavit; (2) her September 5, 1996 affidavit; (3) portions of the October 28, 1996 examination transcript attached to various summary judgment motions; and (4) the entire examination transcript attached to the contempt motion.

 Britton contends that the article incorrectly suggests that he prevailed in the federal action because of the admission into evidence of Loughlin’s affidavit, and that the affidavit was obtained from a heroin addict who was intimidated by him.

 This court allows Britton’s motion to limit the use of the examination transcript. Britton requested that the court use the examination transcript only for purposes of the summary judgment motion and not for the purposes of defendants’ truth defense. Because the examination transcript is not an affidavit signed under the pains and penalties of perjury, the court relied on the examination transcript solely for purposes of this summary judgment motion. See Galvin v. Town Clerk of Winchester, 369 Mass. 175, 177 (1975).