## ORMOND, justice, v. BALL.

1. The duties of a justice of the peace under the law of this State are not of so varied and complex a nature as they were at common law. In this State he is a civil magistrate, but has duties also imposed upon him in connection with the administration of the criminal law.

2. His civil jurisdiction is prescribed by the constitution, and by statute he is authorized to issue warrants against persons accused of crime, and to hold courts of inquiry to examine into the accusations against them.

3. The court of inquiry and the constitutional court are, although presided over by the same officer, separate and distinct courts. The civil court is held at "fixed times and places;" the court of inquiry at such time as the justice may determine. The constitutional court is always in existence. The statutory court of inquiry is organized for a particular purpose, and passes out of existence as soon as this object is accomplished.

4. The issuing of a criminal warrant by a justice of the peace is a judicial act, performed by a judicial officer, and is the beginning of a judicial proceeding, but it is not the act of a court.

5. The court of inquiry does not come into existence until the accused has been "legally arrested and brought before" the magistrate and a court organized for the purpose of examining into the accusation.

6. A justice of the peace can not issue a special warrant, returnable only before himself, but a warrant issued by him must be made returnable before himself or "some other judicial officer."

7. The officer to whom the warrant is delivered for execution has some discretion with reference to the judicial officer before whom the warrant shall be returned, and the magistrate who issues it can not become a court if the warrant should not be returned before him.

8. A judicial officer can not punish for contempt unless the contempt is of the court over which he presides.

9. A justice of the peace may attach for contempt a person in contempt of the constitutional court over which he presides, and punish him by imposing a fine of not more than five dollars and imprisonment for not exceeding five hours.

10. He may exercise like authority, and perhaps impose a similar punishment, for a contempt of a court of inquiry over which he is presiding.

11. But the refusal to surrender to an arresting officer, upon a warrant lawfully issued, one accused of crime can not be dealt with as a contempt of court by a justice of the peace who has done nothing more than issue the warrant.

12. If for such a refusal a justice of the peace, acting under authority supposed to have been conferred upon him as the presiding officer of the court created by the constitution, issues a rule for contempt, prohibition will lie to enjoin its further progress.

13. The common-law offense of refusal by an officer to execute a warrant delivered to him for that purpose is indictable in this State, and under the statutes of this State any person interfering with such an officer while attempting to execute the warrant is likewise indictable.

Argued July 15,— Decided August 11, 1904.

Prohibition.    Before Judge Lumpkin.    Fulton superior court. June 8, 1904.

The Governor of Ohio issued a requisition upon the Governor of Florida for the arrest of a fugitive from justice, who had fled from Ohio and sought refuge in Florida.    The requisition was honored and the fugitive apprehended.    The extradition officer stopped over, between trains, in Atlanta with the prisoner, and lodged him for safe-keeping in the police station in that city. While the prisoner was in the police station, Ormond, the plaintiff in error, as a justice of the peace, issued a warrant charging him with cheating and swindling.    This warrant was made returnable before Justice Ormond, "or some other judicial officer of this State."    When the bailiff attempted to serve this warrant and arrest the fugitive, he found him in the police station, and was informed that he could not get the prisoner, because the police officers in charge of the police station had been instructed by Chief of Police John W. Ball not to surrender the prisoner on the warrant in question.    These facts having been communicated to Justice Ormond, he issued a rule against the chief of police, calling upon him to show cause why he should not be punished for contempt.    The rule for contempt recited the issuance of the warrant for cheating and swindling and the facts upon which

rested the claim that the chief of police was in contempt. When the respondent was served with the rule, he applied to the superior court for the issuance of a writ of prohibition, directed to Justice Ormond, restraining him from further proceeding with the rule for contempt. A prohibition nisi was issued, which was, at the hearing subsequently held, made absolute. Ormond, as notary public and ex-officio justice of the peace, excepted.

*Arnold & Arnold*, for plaintiff in error, cited, as to right of State, through which extradited prisoner is transported, to interfere with the extradition agent's custody of the prisoner: Const. U. S art. 4, sec. 2, par. 2 (Civil Code, § 6004); Rev. St. U. S. §§ 5278–9; 24 How. 66; 51 How. Pr. (N. Y.) 482; 24 N. J. L. 634; 2 Humph. (Tenn.) 258; 16 Wall. 366; 111 U. S. 624; 21 How. 506; 13 Wil. 397; 34 Ohio St. 64 (32 Am. R. 345); 69 Minn. 104; 73 Ala. 503 (49 Am. R. 63); Pol. Code, §§ 21, 22; 4 Wheat. 429; 27 Fed. 171; 144 U. S. 44; 95 U. S. 722; 162 U. S. 399; 114 U. S. 539; 7 Wheat. 353; 127 U. S. 700; 7 A. & E. Enc. L. (1st ed.) 603, n. 1. Efficacy of Justice Ormond's warrant to bring the prisoner before him for trial: 51 How. Pr. 422; 24 N. J. L. 634. Power of justice's court to punish for contempt: Civil Code, §§ 5855–6, 4043–50; Cobb's Dig. 843–4; Id. 647; Penal Code, § 882; 111 *Ga.* 168. Power by prohibition to restrain justice's court from proceeding with contempt trial: 23 A. & E. Enc. L. 198–203, 210–11; High on Extr. Legal Rem. § 767 (a); 70 *Ga.* 191; 74 *Ga.* 377; 75 *Ga.* 112; 40 *Ga.* 87; 54 *Ga.* 595; 85 *Ga.* 415; 104 *Ga.* 178; 109 *Ga.* 399; 109 U. S. 174; 116 U. S. 167; 142 U. S. 479; 155 U. S. 396; 166 U. S. 136; 38 Am. D. 593; 29 How. Pr. 176; 5 Utah, 536; 38 L. R. A. 554, 559; 24 Minn. 149; 51 N. Y. Ap. Div. 102; 23 A. & E. Enc. L. 221. Effect of allegation and proof that the justice was prejudiced against Ball: 12 A. & E. Enc. L. (1st ed.) 52–3; 12 Cal. 500; 18 Cal. 181; 59 Iowa, 550; 28 N. Y. 324; 12 Johns. 356; 29 Cent. Dig. 1766, § 187.

*J. L. Mayson* and *W. P. Hill*, contra, cited, as to prohibition: Civil Code, §§ 5846, 2321, 4085; 85 *Ga.* 413; 54 *Ga.* 596; 40 *Ga.* 88; 75 *Ga.* 112; 5 Utah, 531; 38 L. R. A. 554; Id. 340; 47 L. R. A. 339; Id. 393; 43 L. R. A. 850; 32 L. R. A. 481; 22 L. R. A. 693; 24 Minn. 143; 51 L. R. A. 107; L. R., 2 H. L. 278; 2 Bailey, 560. Contempt: 5 Utah, 531; 103 Cal. 127; 92 Cal. 431; 122 Mo. 462; 4 Wash. 30; 85 Va. 632. Limited juris-

diction of justice's courts as to contempt: Penal Code, §§ 884, 886; Civil Code, §§ 4046, 4082, 4097; 87 *Ga.* 80; Rapalje on Contempt, § 6, n. 2, 5; 61 *Ga.* 74; 76 *Ga.* 356.   Local warrant subordinate to extradition warrant: Const. U. S. (Civil Code, § 6004); 103 *Ga.* 472; 69 Am. D. 285; 57 Am. D. 382; 3 Fed. Stat. Annot. 78, et seq.

COBB, J.   (After stating the facts.)   The office of justice of the peace is one both ancient and honorable, and comes to us from the common law.   The duties imposed upon this officer by the common law and by statute were of a varied and complex nature.   While we have retained the name and the office, the duties of a justice of the peace under our law are by no means as numerous as they were in England.   Under our law he is a civil magistrate, and he has also duties imposed upon him in connection with the administration of the criminal law.   He is recognized by the constitution as an officer clothed with judicial powers.   Civil Code, § 5831.   His jurisdiction as a civil magistrate is fixed by the constitution.   Civil Code, § 5856.   The authority of a justice of the peace in reference to the administration of the criminal law is derived, not from the constitution, but from statutes.   He is authorized to issue a warrant for the arrest of an offender against the penal laws.   Penal Code, § 882. He has authority to "hold a court of inquiry to examine into an accusation against a person legally arrested and brought before him."   Penal Code, § 906.   As a civil magistrate he is required to hold his court monthly at fixed times and places.   Civil Code, § 5856.   As the judge of a court of inquiry he may hold the court at such time as shall be determined by him.   Penal Code, § 906.   The justice of the peace court, or the justice's court, as it is commonly called, which sits monthly at fixed times and places for the transaction of civil business, is one court, and a court of inquiry, organized for the purpose of examining into an accusation against a person arrested for the violation of the penal laws, is a separate and distinct court, notwithstanding they may be presided over by the same individual.   The justice of the peace, who is elected by the people of the district, or the commissioned notary public, who has all the powers of a justice of the peace so elected, may hold a court for the trial of a possessory warrant case, or a court for the trial of a forcible entry and detainer case,

but such courts are in no sense the justice's court of the district, but special courts with limited jurisdiction, brought into existence for the determination of the particular case, and passing out of existence when the final judgment has been rendered.   So it is when the justice of the peace holds a court of inquiry, a court connected with the administration of the criminal law; the court comes into existence in the time and manner prescribed by the statute, and is organized for a specific purpose, and when this object is accomplished, the court goes out of existence.   The justice of the peace as a constitutional officer has full authority, when sitting at the time and place fixed by law, to deal with all matters of a civil nature within his jurisdiction, and when so sitting neither he nor the court over which he presides has any jurisdiction whatever in reference to any matter connected with the administration of the criminal law.   His authority to deal with such matters as a judicial officer is derived from the statute giving him power to issue warrants, and his power to hold a court having jurisdiction of such matters is also derived from the statute which recognizes as still existing the common-law court of inquiry organized for the purpose of examining into an accusation against one duly arrested under the penal laws.   He can no more exercise the criminal jurisdiction vested in him by statute when he is presiding as the judge of the constitutional court than he can exercise civil jurisdiction vested in him by the constitution at a court of inquiry held at such time and place as he may fix.   His authority to hold a court of inquiry is limited.   The court of inquiry does not come into existence until a person is "legally arrested and brought before him."   Then, and not till then, does the court of inquiry come into existence.

But it may be said that the issuing of the warrant is a judicial act.   This is true, and it has been held that the making of an affidavit upon which a warrant is to be issued is the beginning of **a judicial** proceeding.   See *Herring* v. *State,* 119 *Ga.* 709.   But the performance of a judicial act does not necessarily make the person performing it a court.   Judicial acts are performed by ministerial officers.   When the sheriff determines whether he will accept an affidavit of illegality he passes judicially upon the question whether or not the grounds of the affidavit are meritorious, but of course the sheriff is not a court when so doing.   The clerk

of the superior court, or a commissioned notary public, who takes an acknowledgment of a deed passes judicially upon the question as to whether or not the deed has been executed in the manner and form required by law; but the performance of this judicial act does not make either of these officers a court. Illustrations might be multiplied. It does not necessarily follow that because a judicial act is performed by a judicial officer he was at the time a court. So, while justices of the peace and other judicial officers who are authorized to issue warrants in so doing pass judicially upon the question whether a warrant should issue, they are not, at this stage of the proceeding, courts. It so happens that under our law the only officers who are authorized to issue warrants are judicial officers, but there is no reason why this authority should not be by the General Assembly vested in officers whose other duties are purely ministerial, such as clerks, sheriffs, and the like. The affidavit and warrant are the beginning of a judicial proceeding, but no court comes into existence as the result of the issuance of such warrant until there has been a lawful arrest and the person apprehended has been brought before an officer authorized by law to organize and hold a court of inquiry, such officers being under our law of the same class and character as those authorized to issue warrants. This view of the matter is strengthened when we take into consideration the fact that neither at common law nor under our statute is a justice of the peace authorized to issue a special warrant, returnable only before himself. Warrants issued by him must be (as the warrant in the present case was) returnable before himself or any other judicial officer having jurisdiction in the premises. Penal Code, § 885. The only officer authorized to issue a special warrant, returnable only before himself, is a judge of the superior court, and he can not lawfully issue such a warrant out of his own circuit. Penal Code, § 886. How far this authority to issue special warrants may invest a judge of the superior court with powers other than those that can be exercised by other officers who are authorized to issue warrants, between the time that the warrant is issued and the time when the person is apprehended and brought before them, is a question not now necessary to be considered. Whenever a justice of the peace is holding court he has all the powers usually incident to courts, such as to preserve and enforce

order, to compel obedience to judgments, orders, and processes, and to control the conduct of officers and other persons connected with the judicial proceeding before it in every matter pertaining thereto, and the like. Civil Code, § 4047. Although not a court of·record, it has these powers. See *Swafford* v. *Berrong,* 84 *Ga.* 65. Hence it follows that when a justice of the peace is holding the constitutional justice's court of the district, he may punish for contempt by a fine of not more than five dollars and imprisonment for a time not exceeding five hours. Civil Code, § 4082. And when holding a court of inquiry he may exercise like authority, and perhaps administer the same punishment. *Swafford* v. *Berrong,* supra. But while this is true, a court of inquiry is not a court in the full sense of that term and for all purposes, it having been held that its judgment can not be reviewed by certiorari, notwithstanding the very broad language of the constitution, vesting in the superior courts authority to correct by certiorari the errors of all inferior judicatories. *Hyden* v. *State,* 40 *Ga.* 476; *Stephens* v. *Wallis,* 75 *Ga.* 726.

It follows, from what has been said, that the power of a justice of the peace to punish for contempt, in a matter relating to the administration of the criminal law, depends upon whether a person has been arrested upon a warrant and brought before him and a court of inquiry duly organized; that until this time arrives he has no authority to exercise the powers of a court and issue a rule for contempt against any one for misconduct growing out of the issuance of the warrant, even though the warrant may have been issued by him. The offender may never be brought before him. The arresting officer has some discretion as to the judicial officer before whom the party apprehended shall be carried. Penal Code, § 897. If the party is never brought before the justice issuing the warrant, and no court of inquiry is ever organized, then of course there can be no contempt of court, unless the warrant issued by the officer is treated as a warrant issued by a court. To do this would be doing violence to the language of the several sections of the Penal Code relating to the subject of arrests and courts of inquiry, which are really but codifications of the common law. These various provisions, when taken as a whole, lead inevitably to the conclusion that no court, in relation to the administration of the criminal law, comes

into existence as the result of the ordinary criminal warrant being issued, until there has been an apprehension of the accused and he is brought before a judicial officer for examination. Justice Ormond, the commissioned notary public of the district, presiding in the constitutional justice's court of that district, had no authority to issue a rule for contempt on the facts as set out in the rule, for the reason that it appears therefrom that it was issued in a matter connected with the administration of the criminal law, and the constitutional justice's court had no jurisdiction in reference to these matters, and the issuance of the rule by him under the circumstances was in excess of his jurisdiction. Although the warrant was lawfully issued by Justice Ormond, the accused, even if apprehended thereunder, was never brought before him, and a court of inquiry was never lawfully organized by the justice, and therefore he was without authority to issue the rule as the presiding judge of a court of inquiry. From the terms of the rule, however, it appears to have been issued by the justice in his capacity as the presiding officer of the constitutional justice's court of the district, and therefore the act complained of was the act of a court. But it was an act in excess of the jurisdiction of the court, and prohibition was the proper remedy to restrain the exercise of this authority. Civil Code, § 4885; 2 Spell. Inj. & Ex. Rem. § 1716 et seq.; 23 Am. & Eng. Enc. Law (2d ed.), p. 195 et seq.; 16 Enc. P. & P. 1094.

But it may be said that the effect of this ruling would be to leave to the discretion of the arresting officer the determination of the question whether the ordinary criminal warrant should be executed; that if there is no power to punish for contempt in such cases, the officer might refuse to execute the warrant; and the administration of the criminal law would thus be at the mercy of incompetent, faithless, or corrupt officers. The Penal Code (§ 895) declares that "every officer is bound to execute the penal warrants placed in his hands." At common law, if the officer to whom a warrant was delivered refused or neglected to execute it, he was punishable for his disobedience and neglect; being indictable therefor and subject to fine and imprisonment. Hale's P. C. 581; 1 Chitt. Cr. Law, *47; Murfree on Shffs. (ed. of 1890) § 1162. This seems to have been the appropriate method, at common law, of requiring arresting officers to perform their

duties in reference to warrants which were placed in their hands. We have been unable to find any instance in the books where a justice of the peace who had issued a warrant ever sought to hold an arresting officer responsible for not executing the same, by an attachment for contempt. There may be cases where, after a court of inquiry has come into existence, an attachment has been issued for contempt against an officer who refused to obey the orders of the court in reference to the custody of the prisoner, or against others who interfered with the officer while carrying out the orders and mandates of the court; but we feel safe in asserting that no case can be found where an officer, or any one else, has ever been ruled for contempt by a justice of the peace who simply issued a warrant and had never become the presiding officer of a court of inquiry. While there is no provison of our Penal Code which in terms makes it an indictable offense for an arresting officer to refuse to execute a warrant placed in his hands, there appears at the conclusion of the 8th division of the Penal Code, which deals with crimes against public justice and official duty the following section: "Any other offense against public justice, not in this Division provided for, shall be a misdemeanor." Penal Code, § 334. That division begins with section 256, which defines the offense of perjury, and embraces a complete chapter on misconduct by officers and other persons concerning the administration of justice, dealing with such offenses as the refusal by sheriffs and other officers to receive prisoners, malpractice by justices of the peace, extortion, assisting prisoners to escape, obstructing legal process, and unlawfully exercising the functions of a peace officer. Keeping in mind that the refusal or neglect of an arresting officer to execute a warrant was an offense at common law, and that the division of the Penal Code just referred to deals with offenses against public justice, certain it is, in our opinion, that the concluding section of that division is sufficiently broad in its terms to authorize the punishment for offenses which were at common law of a kindred nature to those enumerated in the division. If a justice of the peace issues a warrant, and the officer refuses to execute it, then the same justice who issued the warrant, although he has no authority to attach for contempt, may, either on his own information or the affidavit of another, issue a warrant for his arrest, and the with-

drawal of the warrant from the officer and the replacing of it in his hands with instructions to execute it, and his refusal to do so, constitute in each instance a separate offense. If the officer is willing to make the arrest, and others interfere with or obstruct him in attempting to discharge his duty, they are indictable under the Penal Code, § 306.

The argument of this case took a broad range, and many intri-cate and important questions relating to interstate extradition were discussed; but under the view we have taken of the case it is unnecessary to refer to them.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., who dissents.*