FRED H. THOMPSON *vs.* BOSTON PUBLISHING COMPANY.

Suffolk.    October 5, 1933. — February 15, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Libel,* Privilege, Malice. *District Court. Clerk of Court. Arrest. Evidence,* Admissions, Relevancy and materiality, Presumptions and burden of proof. *Agency,* Scope of authority.

The filing of a complaint in a district court and the issuance of a warrant therefrom bearing its seal and the teste of its judge were judicial proceedings within the meaning of the rule of law making privileged fair and accurate reports of judicial proceedings when made without express malice, even though the warrant was issued by the clerk in the absence of a judge: the clerk to that extent was exercising judicial powers.

It could not properly be found that an article published in a newspaper, which stated that the defendant in such proceedings in the District Court was "arrested . . . in connection with . . . larceny" "on a fugitive from justice warrant," the "specific charges in the warrant" being that the defendant " 'procured the commission of larceny . . . [of certain property] for which he gave . . . $600,' " was unfair and inaccurate within the meaning of the rule of law above stated, where the warrant merely charged the defendant with being a fugitive from justice, but the complaint contained allegations that he was a fugitive from justice "in that . . . [he] did procure . . . [the theft of] property of the value of" $600: the complaint and warrant, taken together as parts of the same proceedings, charged the defendant with procuring larceny, which was the same offence as that stated in substance in the article, and the statement in the article as to the method by which the crime was accomplished did not change the nature of the crime charged, nor constitute an independent defamatory imputation.

Where, at the trial of an action of tort for libel by the defendant above mentioned against the proprietor of the newspaper, the only reasonable conclusion to be drawn from the known facts and the plaintiff's testimony on the issue, whether the plaintiff had been arrested in such criminal proceedings, was that he had been arrested and that he had full knowledge of his arrest, testimony by him that he was not informed and did not know at the time that he was under arrest did not warrant the submission of such issue to the jury; a ruling was required as a matter of law that the fact of his arrest was admitted by him.

It was *held,* in the action above described, that there was no error on the part of the trial judge

(1) In excluding testimony offered by the plaintiff that the managing editor of the newspaper, several years after the publication of the article in question, had said that he was sorry he published it, but that he was forced to do so, there being no evidence to show that the managing editor had any authority to make such a statement or that it was made in the performance of his duties.

(2) In admitting testimony by the managing editor that the plaintiff's arrest on the charge of procuring larceny was "a matter of considerable news interest": the witness's opinion was admissible as showing his reason for publishing the article and to rebut any inference of malice on his part;

(3) In excluding questions asked of the managing editor as to what effort he made to verify any statements in the article and as to whether he had ever heard anything in the course of his career to lead him to think that such statements were justified: there was no duty resting on the witness to pass upon the accuracy of the charge which had been made against the plaintiff;

(4) In excluding a question asked of the managing editor as to whether he had "ever known or heard anything bad affecting" the plaintiff: the plaintiff's previous reputation to the knowledge of the witness was irrelevant on the issue of the intent with which the article was published.

Tort for libel.   Writ dated May 18, 1928.

The action was tried in the Superior Court before *Morton*, J.   The complaint against the plaintiff filed in the District Court of Newton contained an allegation that he "is a fugitive from the justice of the state of New Hampshire in that as is alleged in a complaint and warrant issued from said New Hampshire the said Thompson did procure one William E. Callahan to steal property of the value of Six Hundred Dollars."   The warrant issued on the complaint in the District Court commanded the arrest of the plaintiff upon the charge of being "a fugitive from the justice of the state of New Hampshire."   Other material evidence, and exceptions by the plaintiff to the admission and exclusion of evidence, are described in the opinion.   The judge ordered a verdict for the defendant.   The plaintiff alleged exceptions.

*E. A. Whitman*, for the plaintiff.

*S. C. Rand*, (*W. B. Manhard* with him,) for the defendant.

CROSBY, J.   This is an action of libel brought against the defendant for a publication in the Boston Traveler.   The answer sets up truth and privilege.   At the trial in the

Superior Court the judge at the conclusion of the evidence directed a verdict for the defendant. The case is before this court on exception to that ruling and on exceptions to the admission and exclusion of evidence. The evidence presents a situation substantially the same as that described in *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, where cases involving the same facts were before this court.

The alleged libel here relied on was published in the Boston Traveler on May 18, 1927, in the following form: "Arrest Post Reporter in Smith Letter Case    Watchman at Atlantic Monthly Plant Also Held, Accused of Stealing Copy for Boston Newspaper Man    Fred H. Thompson, a Boston Post reporter, of 150 Pleasant Street, Newton Centre, and William E. Callahan, watchman of the Rumford Press, Concord, N. H., were arrested today in connection with the larceny of copies of the Atlantic Monthly containing Gov. Al. Smith's article on Catholicism. Thompson was arrested by Inspector B. J. Goode of the Newton police force on a fugitive from justice warrant. Callahan was arrested at Concord charged with larceny. The warrant for Thompson was issued today in the Newton district court at the request of J. E. Silva, chief of police of Concord, N. H., and Herbert W. Rainie, solicitor of Merrimac county, N. H. The specific charges in the warrant alleged that Thompson 'procured the commission of larceny by Callahan of eight printed pages, for which he gave Callahan $600.' Thompson was bailed by David P. Shea in $1000, for hearing tomorrow."

The plaintiff contends that the defendant has not made out the defence of privilege to publish the facts relating to the issuance of the warrant on the criminal complaint which had been made, despite the fact that the privilege of such a publication was upheld on similar facts in the cases reported in 279 Mass. 176, 186–187. He contends that the opinion in those cases proceeded on a misconception of the point sought to be made which in effect as it was there, and as now understood, is that if no judge was present when the warrant was issued the proceeding was not a judicial one within the privilege rule. The plaintiff then

as now relied upon what was said in *Cowley* v. *Pulsifer*, 137 Mass. 392, respecting the unprivileged nature. of the publication of the contents of papers merely filed in the office of the clerk of the court upon which no judicial action has been taken. See *Conner* v. *Standard Publishing Co.* 183 Mass. 474, 479; *Kimball* v. *Post Publishing Co.* 199 Mass. 248, 249; *Lundin* v. *Post Publishing Co.* 217 Mass. 213, 216. But this complaint and the warrant issued thereon were not such papers. The warrant was issued under the seal of the court and bore the teste of the judge of the court. It purported to be a proceeding before the court and the plaintiff was not permitted to show the contrary. The judicial nature of the proceeding being thus established, the publication is held to be privileged. See *Lundin* v. *Post Publishing Co.* 217 Mass. 213, 215, 217. If the plaintiff were permitted to show, or the court should take notice that no judge was present when this warrant was issued upon the theory that it would not contradict the record (since clerks of courts apparently may issue warrants under G. L. c. 276, § 16, the rendition statute, and since such a warrant as thus issued should be the warrant of the court, see *Commonwealth* v. *Posson*, 182 Mass. 339, 342) still this would be a judicial proceeding within the privilege rule. The privilege is not limited to proceedings before a judge. See Odgers, Libel and Slander (6th ed.) 191. As was said in *Lundin* v. *Post Publishing Co.* 217 Mass. 213, at page 216: "this principle [privilege] is limited to matters which really have been made the subject of judicial action" as opposed to the mere filing of papers with a clerk of court as was the case in *Cowley* v. *Pulsifer*, 137 Mass. 392. Although in the issuance of a warrant in such a case a clerk does not necessarily become a judicial officer, he does exercise judicial powers; and hence, when the clerk issues a warrant, the proceeding is one essentially judicial as that phrase is understood in the law of privilege. See *Ormond* v. *Ball*, 120 Ga. 916, 920. The decisions in *Stanley* v. *Webb*, 4 Sandf. 21, and *Cincinnati Gazette Co.* v. *Timberlake*, 10 Ohio St. 548, cited by the plaintiff, are not the law of this Commonwealth. *Stuart*

v. *Press Publishing Co.* 83 App. Div. (N. Y.) 467, relied on by the plaintiff, apparently is overruled by *Campbell* v. *New York Evening Post, Inc.* 245 N. Y. 320, which held that the mere filing of a pleading is a public and official act in the course of judicial proceedings and that the publica- tion of a fair report thereof is privileged. There is nothing in this record requiring a conclusion different from what was decided in 279 Mass. 176, 186, 187. Even assuming that it appeared that no judge was present when the warrant in this case was issued, the privilege would still apply. The facts show that the warrant was issued in a judicial proceeding, and the plaintiff admitted that he was arrested in connection with the Smith letter case. It follows that the publication of the proceedings was therefore privileged. These questions are settled by what was decided in *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 186, 188, 189.

The plaintiff further complains that the report of these judicial proceedings was not fair and accurate nor true. See *Sweet* v. *Post Publishing Co.* 215 Mass. 450, 452, 453. His principal contention in this respect is that the article alleged that the plaintiff and one Callahan were arrested in connection with "the larceny of copies of the Atlantic Monthly"; and that the warrant charged that the plaintiff "procured the commission of larceny by Callahan of eight printed pages, for which he gave Callahan $600." Although no such express charge was contained in the warrant, a fuller specification of the charges appears in the complaint, which was a part of the same proceeding. The fact, therefore, that these charges were not expressly contained in the warrant would not be material. No question for the jury was presented by reason of the fact that the charges as set forth in the alleged libel differed somewhat from those in the complaint. The article as a whole recited that the plaintiff was charged with procuring the crime of larceny. That this was the fact appears from the complaint. The statements in the article as to the method by which this was accomplished did not change the nature of the crime charged, nor constitute an independent defamatory imputation. *Bresslin* v. *Sun Printing & Publishing Association*, 177 App. Div. (N. Y.) 92.

The other differences which existed are immaterial. The article in these particulars was substantially true and accurate and entirely fair. This is all that was required. See *Conner* v. *Standard Publishing Co.* 183 Mass. 474; *American Publishing Co.* v. *Gamble,* 115 Tenn. 663; *Stone* v. *Hutchinson Daily News,* 125 Kans. 715. There is nothing in *Sweet* v. *Post Publishing Co.* 215 Mass. 450, to the contrary.

The plaintiff further contends that the fact of his arrest presented a question for the jury, and that a verdict in favor of the defendant could not properly have been directed on that issue. The cases of *Mowry* v. *Chase,* 100 Mass. 79, and *Commonwealth* v. *Merrick,* 255 Mass. 510, are cited by the plaintiff in this connection. Although these cases hold that the fact of an arrest presents a question for the jury, it was recognized therein that in an appropriate case this question might be ruled upon as matter of law. It was considered in 279 Mass. 176, 188, 189. The charge there was not excepted to, and hence the correctness of the ruling was not open to the plaintiff. To constitute an arrest there must be either a physical seizure of the person by the arresting officer, or a submission to his authority and control. Relying upon the second part of this proposition the plaintiff seeks to avoid a finding of an arrest upon the ground that he did not know that he was arrested, and hence cannot be found to have submitted to the authority of the officer. The return of the officer on the warrant was evidence of the fact of an arrest, see *Fisher* v. *Hamilton,* 49 Ind. 341, but it would not be conclusive of the fact in this proceeding. See Wigmore on Ev. (2d ed.), § 1664. Compare *Simmons* v. *Richards,* 171 Mass. 281. Although the plaintiff testified that he was arrested, he contends that he did not learn of that fact at the time of such arrest but was informed of it afterwards. He was entitled to be informed of his arrest at the time it occurred, and if the evidence upon that question was conflicting an issue of fact was presented for the determination of the jury. The plaintiff testified, in substance, that at the time of his arrest he did not understand that he had been arrested, but had since been informed that he was arrested in connection with the Smith letter case;

that two police officers came to his house in Newton; that one of them, officer Goode, told him there was a complaint at the police station, there was some one down from New Hampshire, it had something to do with the Smith article in the Post; that the result was that after calling his office on the telephone, he took the officer in his car to Boston; "that the officer said he showed him the warrant, but he did not think so. He didn't recall that he showed him anything. He did not remember seeing it or hearing it called a warrant"; that it was not read to him; that the officer did not tell him he had a warrant for his arrest; that he went with the officer to the police station; that he knew there was some proceeding involving a man by his name; that he did not know when at the police station that he went there on account of this article; that he learned afterwards that the proceeding involved him, but he did not go to the police station for that purpose; that Mr. Shea did not come to the police station at his request, but did come there after Thompson had been in town; that he did not think he talked with Shea in town, but the police officer accompanied him in town and went back to the police station when Thompson did; that he was informed afterwards that $1,000 bail was put up by Shea, but at that time he did not know it; that he knew at some time he had been arrested and bail given for his release; that it took a lawyer to tell him that because he did not know what the whole matter was about. He further testified that he was informed afterwards that he had been arrested on a charge that he was a fugitive from justice from New Hampshire; that he did not understand that it was alleged in the complaint and warrant issued in that State that he procured William E. Callahan to steal property of the value of $600.

It appears from further testimony that the plaintiff had learned that the Rumford Press in Concord, New Hampshire, was working for the Atlantic Monthly in connection with the printing of the Smith letter; that he went to the treasurer of the Atlantic Monthly and attempted to obtain a copy of Mr. Smith's reply to an article written by one Marshall which was to be printed in the Atlantic

Monthly; that he desired to obtain it so that it could be published in the Boston Post before it was published in the Atlantic Monthly but did not succeed in obtaining a copy from the treasurer. The plaintiff testified that he went to Concord and saw one Callahan, who was the night watchman at the Rumford Press plant, and obtained from him a copy of the article in question.

Ordinarily when a case is heard by a jury and the facts are in dispute, it is for the jury to find the facts upon the entire evidence and the reasonable inferences to be drawn therefrom. In the present case, although the plaintiff testified that he was not informed of his arrest, it does not follow that the trial judge was required to submit that question to the jury. It is to be determined upon the evidence so far as pertinent to that issue. His entire testimony, including the visit by the officers to his house, the conversation which took place at that time, his trip to the police station with the officers, the furnishing of bail by Shea, the plaintiff's testimony that he knew it was some proceeding involving a person by his name, shows that he must have known that he was arrested. Even if it be assumed that when the officers called at his house he was not then informed of his arrest, it is clear from his testimony as to what occurred thereafter, and the fact that at the station house he was admitted to bail and released, that he had been arrested. No other reasonable conclusion can be reached from the known facts and his entire testimony. Notwithstanding his denial that he knew he had been arrested, it is plain, as matter of law, from his further testimony, hereinbefore recited, that he had full knowledge of the fact of his arrest. The trial judge accordingly was required to rule as matter of law that the fact of his arrest was admitted by him. In view of the conclusion reached upon this question the cases cited by the plaintiff are not applicable. See *Mowry* v. *Chase*, 100 Mass. 79, 85; *Carleton* v. *Bickford*, 13 Gray, 591; *Commonwealth* v. *Gangi*, 243 Mass. 341, 345; *Commonwealth* v. *Merrick*, 255 Mass. 510, 512.

The truth or privileged nature of the article as to all

matters contained therein is not disputable. The evidence fails to support a finding of express malice. The plaintiff admits that he suffered no distress at being arrested, but that he did to being charged with being a fugitive from justice. The public in attaching the ordinary meaning to the article published would naturally understand that the plaintiff had been held to answer on a fugitive from justice warrant. This was true for the purpose of that proceeding and the plaintiff could recover no damage therefor.

The plaintiff, in order to meet and overcome the defence of truth and privilege, contends that there was malice in the publication of the article, and offered certain evidence to prove this fact. *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176. He testified that Harold F. Wheeler was managing editor of the Boston Traveler at the time of the publication, and that in the spring of 1932 he had a talk with Wheeler about the article. He then offered to show that Wheeler said he was sorry he put it in, but he was forced to do it. This evidence was rightly excluded. The statement was made several years after the publication. Besides there was no evidence to show that Wheeler had any authority to make any statement which might be construed as indicative of the fact that the defendant corporation maliciously published the article, nor that the statement was made in the performance of his duties. See *American Publishing Co.* v. *Gamble*, 115 Tenn. 663, 686; *Reusch* v. *Roanoke Cold Storage Co.* 91 Va. 534, 537; *McClellan* v. *L'Engle*, 74 Fla. 581, 592. The plaintiff further contends that on the issue of malice it was error to permit the witness Wheeler to testify that the arrest of a reporter of the Boston Post on the charge of having procured the larceny of the Smith article was "a matter of considerable news interest"; that the exclusion of a question to Wheeler as to what effort he made to verify any statements in the paper was improper, and that to exclude questions to Wheeler as to whether he had ever heard anything in the course of his career to lead him to think that the statements in the article were justified, and whether he had

"ever known or heard anything bad affecting" the plaintiff, was wrong. We are of opinion that there was no prejudicial error in·the exclusion of any of the proffered testimony. The fact that Thompson had been arrested in connection with the alleged larceny of the article was a matter of considerable news interest, and the editor's opinion in this regard was admissible as showing his reason for publishing it, and to rebut any inference of malice on his part. So also the exclusion of the other questions above referred to was proper. There was no duty resting on the editor to pass upon the accuracy of the charge which had been made. *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 192. The plaintiff's previous reputation to the knowledge of the editor of the defendant was irrelevant on the intent with which the article was published. ·If material in any respect it would not be sufficient to warrant a finding of express malice. The trial judge properly directed a verdict for the defendant.

No error of law appears in the conduct of the trial. The entry must be

*Exceptions overruled.*