14250

## LYBRAND v. THE STATE COMPANY

(184 S. E., 580)

*Mr. L. H. Andrews*, for appellant,

*Messrs. Elliott, McLain. Wardlaw & Elliott*, for re-spondent,

March 11, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was instituted to recover damages, general and special, on account of a certain publication made by the defendant, alleged to be libelous and defamatory of the plaintiff. The Circuit Court sustained·a demurrer to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action because it was priviledged, being the publication of a judicial proceeding and there being no allegation that the publication was not a fair and true report of such proceedings. The case is before this Court on exceptions to that ruling.

The alleged libel here relied on was published in The State on April 18, 1934, in the following form:

"Woman Attorney Seeks Damages
"Mrs. S. Evelyn Lester Files Three Suits
"Total of $30,000.00
"Insurance Company Charged with Libel, Slander
and Conspiracy

"Mrs. S. Evelyn Lester, local attorney, has brought three suits, one in the Court of Common Pleas for $25,000.00, and two in the County Court for $3,000.00 each, the suit for the larger amount being against the Commercial Casualty Company, A. H. Sawyer and George Lybrand, and the two suits for the smaller amount against the Commercial Casualty Company alone.

"The suit for $25,000.00 against the Insurance Company, Sawyer and Lybrand, alleges that the plaintiff had been employed by Irene Brown, Negress, on a claim against the Insurance Company and that she had entered suit against the Company and that when the issues were made up by the service of an answer by the attorney representing the com-

pany that she was then and there entitled to be present and consulted about the settlement if one was to be made.

"The complaint of the plaintiff further alleges that Sawyer, whom the plaintiff alleges has a contract whereby he has a personal interest on all business that the company gets in South Carolina, and Lybrand traveled 40 miles into the country and got Irene Brown, 'ignorant and unlettered' to sign an affidavit settling for $50.00 in $1.00 bills.

"The plaintiff asked for $1,500.00 in actual damages and $23,500.00 in the form of punitive damages.

"In the suit for libel it is alleged that the defendant put into writing a libelous statement in the form of an affidavit prepared at its place of business for Irene Brown to sign and that A. W. Sawyer offered the affidavit in evidence in open Court December 18, 1933. The sum of $3,000.00 is asked for libel.

"In the suit for slander it alleged that Sawyer made slanderous remarks about the plaintiff to her client. The sum of $3,000.00 is asked for slander."

The appellant contends that the matters and things stated in the said article, headlines, and news story were false and untrue, malicious, defamatory, and libelous and unfounded, and in fact had no basis, that the same was not the publication of a judicial proceeding, and that, inasmuch as no judicial action had been taken thereon, it had no sanction of privilege whatever, and that the burden is upon the defendant to prove the truth of the alleged false and libelous statements contained in the article.

It appears on the face of the complaint that some time prior to April 18, 1934, one S. Evelyn Lester. brought an action in the Court of Common Pleas for Richland County, entitled *S. Evelyn Lester, Plaintiff, v. Commercial Casualty Insurance Company, A. H. Sawyer,* and this plaintiff *George D. Lybrand, Defendants,* and that the said S. Evelyn Lester also instituted an action in the Richland County Court, entitled *S. Evelyn Lester, Plaintiff, v. Commercial Casualty Insurance Company, Defendant.* It is alleged that the com-

plaints in these two suits contain certain malicious libelous and untrue allegations of and concerning George D. Lybrand.

It is alleged in the case at bar that the defendant, its agents and servants, published and circulated of and concerning the plaintiff the article and news story hereinabove set forth, which article and news story contain excerpts from and portions of the complaints above referred to, and it is alleged that the article and news story and the statements therein contained of and concerning the plaintiff were libelous and malicious.

It appears that the precise question presented by this appeal has never heretofore been passed upon by this Court. Undoubtedly the tendency of the early American cases is to limit the privilege of publishing judicial proceedings to matters which take place in public either at the trial or at some other hearing of the case in open Court or, if not in open Court, then at some place and before some officer or tribunal where the public have the right to be present.

The greater weight of authority elsewhere is to the effect that the publication of pleadings or other preliminary papers to which the attention of no judicial officer has been called and upon which no judicial action has been taken, even though filed, is not within the privilege accorded to the publication of judicial proceedings, in the absence of statutory modification of the rules of the common law. Until recent years this rule has apparently been uniformly held by an almost unbroken line of authority, as shown by the cases listed in the annotated note appearing in 52 A. L. R., 1438, following the report of *Campbell v. New York Evening Post,* 245 N. Y., 320, 157 N. E., 153, 155, 52 A. L. R., 1432.

Jurisdictions generally adhering to this rule rest their conclusions upon the reasoning that the public have no rights to any information on private suits until they come up for public hearing or action in open Court; and, when any publication is made involving such matters, they possess

no privilege, and the publication must rest on either non-libelous character or truth to defend it. *Park v. Detroit Free Press Co.,* 72 Mich., 560, 40 N. W., 731, 1 L. R. A., 599, 16 Am. St. Rep., 544; *Barber v. St. Louis Dispatch Co.,* 3 Mo. App., 377. Another reason given is that suits might be brought containing scandalous accusations and after publication be discontinued without any attempt to try them, or on trial the cases may entirely fail of proof or probability. Among the leading cases holding to this view are the following: *Cowley v. Pulsifer,* 137 Mass., 392, 50 Am. Rep., 318; *Park v. Detroit Free Press Co., supra; Houston Chronicle Publishing Co. v. McDavid* (Tex. Civ. App.), 173 S. W., 467.

But the Massachusetts Court in the recent case of *Thompson v. Boston Pub. Co.* (1934), 285 Mass., 344, 189 N. E., 210, 212, apparently shows a decided tendency to relax the rule. In that case, which was an action for libel, a rendition warrant was issued by the Clerk under the seal of the Court and bearing the teste of the Judge of the Court. It purported to be a proceeding before the Court, and the plaintiff was not permitted to show the contrary. It was held that, the judicial nature of the proceeding being thus established, the publication was held to be privileged; it having been made in this purely formal and conventional manner the subject of judicial action. The Court used this language:

"Although in the issuance of a warrant in such a case a Clerk does not necessarily become a judicial officer, he does exercise judicial powers; and hence, when the clerk issues a warrant, the proceeding is one essentially judicial as that phrase is understood in the law of privilege. See *Ormond v. Ball,* 120 Ga., 916, 920, 48 S. E., 383. The decisions in *Stanley v. Webb,* 4 Sandf. (6 N. Y. Super Ct.), 21, and *Cincinnati Gazette Co. v. Timberlake,* 10 Ohio St., 548, 78 Am. Dec., 285, cited by the plaintiff, are not the law of this commonwealth.  *  *  *

"Even assuming it appeared that no judge was present when the warrant in this case was issued, the privilege would still apply. The facts show that the warrant was issued in a judicial proceeding, and the plaintiff admitted that he was arrested in connection with the Smith letter case. It follows that the publication of the proceedings was therefore privileged."

The practice was quite generally followed in this State by the lawyers of an earlier generation, when filing a summons and complaint, in the Clerk's office, to require the clerk, not only to sign the summons, but also to affix thereto his official seal as Clerk of the Court of Common Pleas. This nicety in practice is followed even today by a great many of our practitioners, but there is no legal requirement or sanction for it under our Code of Procedure. If there were, then under the authority of *Thompson v. Boston Pub. Co., supra,* it would be logical to hold that the filing of a pleading in these circumstances would constitute such a public and official act in the course of a judicial proceeding as would make its publication privileged.

The decision in *Campbell v. New York Evening Post, supra,* is a radical and fundamental departure from what had theretofore been regarded as an established rule, and in our view it is based upon very sound and convincing reasoning. It recognizes that numerous cases in England and in the states hold that the rule of privilege does not apply to pleadings which, though filed, have not yet received judicial notice. It goes on to say:

"The English law plainly excludes from consideration pleadings filed, but not acted on in open court. With us the question is whether they may be brought under the head of judicial, public, or official proceedings. The privilege has been gradually extended to all matters which have been made the subject of judicial proceedings in any court of record or not of record, and whether such proceedings may be preliminary or interlocutory or even *ex parte*. Odgers on Libel & Slander (5th Ed.), p. 308; *Lundin v. Post Pub.*

*Co., supra,* [217 Mass., 213, 104 N. E., 480, 52 L. R. A. (N. S.), 207]. Arguments which met with no favor 70 or 80 years ago have prevailed with the courts in recent years. *Usill v. Hales,* 3 C. P. Div., 319. The test which remains is said to be whether the pleading has come before a court or judge and been made the subject of judicial action. If it has not received the formal oversight of a court or judge as a basis for action no matter how public or how effective in character as a part of a lawsuit it may be, it is urged that the privilege does not exist. The rule has not escaped criticism (Mich. Law Rev., March, 1926) and it has been ignored in Pennsylvania (*Mengel v. Reading Eagle Co.,* 241 Pa., 367, 88 A., 660).

"The incongruous result follows that a newspaper may freely, if without actual malice, publish the contents of a complaint, if it has been read and filed on an *ex parte* application for an injunction, an order of arrest, an attachment, or an order of publication, yet, if the complaint has merely been filed as a public document in a public office, the newspaper which publishes its contents runs the risk of repeating a libel. Such incongruities are the inevitable result of the endeavor of the courts to mitigate by piecemeal the harshness of the old rules which protected only reports of trials in open court."

In South Carolina, as in New York, writ process no longer exists. *Southern Cotton Oil Co. v. Hewlett et al.,* 107 S. C., 532, 93 S. E., 195.

Judicial proceedings are generally defined as proceedings before a Court or a Judge. The question to be determined here is whether or not the filing of a summons and complaint in the office of the Clerk of the Court is a public and official act in the course of judicial proceedings.

An action is defined in our Code (Section 2, Vol. 1, 1932), as "an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement of protection of a right, the redress or prevention of a wrong,

or the punishment of a public offense." It is commenced by the service of a summons, with or without a complaint (Section 427, Vol. 1, Code), and must be subscribed by the plaintiff or his attorney, who is an officer of the Court. The summons is the mandate of the Court. It "is a means supplied by the law to the assertion of jurisdiction." *Southern Cotton Oil Co. v. Hewlett et al., supra.* Section 595 requires that the summons and complaint be filed in the office of the Clerk of Court at least fourteen days before Court. We think it follows that when so filed they become public documents in a public office.

It was held in *Oliveros v. Henderson,* 116 S. C., 77, 106 S. E., 855, 859: "All the authorities seem to agree, also, that either an individual or a newspaper has the right, with some exceptions, to publish the proceedings of our courts of justice. The reason for this rule is that the public have a right to know what takes place in a court of justice, and unless the proceedings are of an immoral, blasphemous or indecent character, or accompanied with defamatory comments, the publication is privileged.' "

With us, as in New York, an action is instituted by the act of one party; the service of the summons begins the suit, and we give here the reasoning employed by the Court of Appeals of New York, upon which it rested its conclusion in the case of *Campbell v. New York Evening Post, supra:*

"A newspaper may publish of A. that B. has begun an action against him by the service of a summons. No reticence is demanded on that score. It may go further and state that the complaint has been filed in the County Clerk's office. To stop there and hold that the newspaper states the contents of the complaint at its peril is to revive a rule of privacy in relation to litigation that no longer has substance. To say that privilege protects the publication of the complaint when the summons is served by order of the court on a nonresident and does not protect the publication when the defendant is a resident is to state a distinction

that has no basis in common sense. We are not bound to keep up such frivolous legal fictions. Judicial proceedings in New York include in common parlance all the proceedings in the action. We may as well disregard the overwhelming weight of authority elsewhere and start with a rule of our own, consistent with practical experience.

"Questions of public policy should be considered. In this case it appears that the action against plaintiff was discontinued; that Mrs. Nichols thus got her alleged false and scurrilous charges before the public as news and then dropped her case. It is contended that such acts should not be deemed privileged, so as to protect the publisher. The contention is too far-reaching. Scandalous matter may come before the public in connection with lawsuits. Personal malice may thus be given a hearing. A complaint withdrawn may not be the vindication that a decision favorable to the accused would be. But complaints are withdrawn after applications have been made to the courts and suits have been dropped before verdicts. Consistency requires us to go forward or to go back. We cannot go back and exclude the publication of daily reports of trials before a final decision is reached. The present distinction is indefensible. Therefore we proceed to a logical conclusion, and uphold the claim of privilege on the ground that the filing of a pleading is a public and official act in the course of judicial proceedings."

To hold that an *ex parte* proceeding, which is privileged, such as an application for an injunction, an order of arrest, an attachment, or an order of publication—all of which may be done at chambers and in all of which the Judge inspects the pleadings—is logically distinguishable from an action started by a summons, or a summons and complaint, filed in the office of the Clerk of the Court does not commend itself to sound reason; especially when it is borne in mind that in such *ex parte* proceedings the Judge hearing the motion does not in any sense pass upon the merits of the case. It would seem that even the old rule would furnish

very poor protection against the privileged publication of pleadings. If anyone were really actuated by malice and wished to get scandalous charges before the public, such a one could easily have scandalous charges incorporated in a complaint filed in the proper public office, and then in due time before trial make a motion to amend the pleading in some respect. On such motion, which would come up before a Circuit Judge, the pleading would *ipso facto* become privileged, whether such motion were granted or refused.

We are unembarrassed by any precedent in this State in reaching a conclusion in this case. In this state of affairs, our main concern is to reach that conclusion which we believe to be logical and based upon sound reason. We would not turn our backs upon old precedents merely because of their antiquity nor adopt new doctrines merely because of their novelty.

But we cannot escape the conclusion reached by the Circuit Court that the filing of a pleading is a public and official act in the course of a judicial proceeding, and that a publication thereof is privileged if it be a fair and impartial report of such proceeding and without malice.

The complaint does not charge that the publication of the article in question is not a fair and impartial report of the pleadings filed in the Richland County Courts. Nor does the complaint contain any direct allegation that the publication itself is based upon malice. It alleges in substance that the respondent published only excerpts from and portions of the complaints. It is reiterated that the allegations contained in these excerpts are false and libelous. A careful analysis of the complaint leads to the conclusion that when the present plaintiff refers to false charges and accusations in the published article, he is referring to the allegations contained in the complaints in the Court below.

The appellant contends that it could not as a matter of law be said that the newspaper article, construing the headlines and the article together, were not prompted by malice.

We have held that the publication of this article was privileged as being the publication of a judicial proceeding. As heretofore pointed out, the defendant, as we view the complaint, makes no specific charge that the defendant was prompted by malice in making the publication, nor that the publication was made with specific intent to injure him. A liberal construction of the complaint, as already stated, points to the conclusion that, when he asserts that the false and libelous charges have injured him, and were intended to injure him, he refers to the allegations contained in the complaints filed in the lower Court. Looking at the headlines of the news article, we note that the plaintiff's name is not even mentioned therein. The news article appears without comment or criticism. It is a bare recital of facts, copied from a judicial proceeding, and, even if this publication were not privileged, and thereby protected, it may be regarded as doubtful if the language used is libelous.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.